IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Covington Specialty Insurance Company, | ) ) ) | Case No. 7:23-cv-04895-JDA |
| Plaintiff, | ) ) | |
| v. | ) ) | **OPINION AND ORDER** |
| Jailen White; Rehab Experience, LLC; Billy Webber, | ) ) ) ) | |
| Defendants. | ) ) | |
| Jailen White, | ) ) | |
| Counter Claimant, | ) ) | |
| v. | ) ) | |
| Covington Specialty Insurance Company, | ) ) ) | |
| Counter Defendant. | ) ) ) | |

This matter is before the Court on a motion for judgment on the pleadings filed by Plaintiff/Counter Defendant Covington Specialty Insurance Company ("Covington"). [Doc. 57.] Defendant/Counter Claimant Jailen White ("White") filed a response in opposition to the motion, and Covington filed a reply. [Docs. 62; 69.] Thus, the motion is ripe for review.[1]

---

[1] Defendants Rehab Experience, LLC ("Rehab") and Billy Webber ("Webber") never filed a responsive pleading in this case, and a Clerk's entry of default was filed as to those Defendants on January 10, 2024. [Doc. 16.]

**BACKGROUND**[2]

On the evening of July 12, 2019, and into the early morning hours of July 13, 2019, White was performing at a nightclub called Club Rehab in Spartanburg, South Carolina, as a paid performer. [Doc. 51 ¶¶ 40, 43–44.] Club Rehab was owned and operated by Rehab, of which Webber was the sole member. [*Id.* ¶¶ 41–42.] Sometime in the early morning hours of July 13, 2019, an altercation broke out in Club Rehab, during which a gunshot or gunshots were fired and White was struck in the back by a bullet, resulting in personal injury and paralysis (the "Incident"). [*Id.* ¶ 45.]

On March 30, 2021, White filed a personal injury action in the Spartanburg County Court of Common Pleas against Webber, Rehab, and others, alleging that they were negligent in failing to provide adequate security on Club Rehab's premises, which contributed to the Incident resulting in White's injury (the "Underlying Lawsuit"). [Doc. 51-1.] White filed an amended complaint in the Underlying Lawsuit on May 27, 2021. [Doc. 51-3.]

White alleges that, at the time of the altercation, Webber and Rehab were insured under a commercial general liability policy, policy no. VBA703908 00 (the "Covington Policy"). [Doc. 51 ¶ 49; *see* Docs. 51-4–51-9.] White's counsel provided Covington with copies of the complaint and amended complaint in the Underlying Lawsuit, but Covington declined liability coverage and defense counsel to Webber and Rehab. [Doc. 51 ¶¶ 50–51.] Webber and Rehab ultimately defaulted in the Underlying Lawsuit, and a default

---

[2] The facts included in this Background section are taken directly from Covington's Amended Complaint, White's Counterclaim, and the attachments to those filings. [Docs. 6; 51 ¶¶ 37–73; *see* Doc. 55 at 2 (Amended Answer, incorporating previously filed Counterclaim).]

damages hearing was held on September 14, 2023. [*Id.* ¶¶ 52–54.] On September 27, 2023, the state court entered an order and judgment awarding White damages in the amount of $18,152,533.00. [*Id.* ¶ 55; Doc. 51-15.]

**Covington's Declaratory Judgment Claims**

On September 29, 2023, Covington filed this action, in which it seeks a declaratory judgment that it has no duty to defend or indemnify Rehab or Webber under the Covington Policy for any of the claims or damages resulting from the Underlying Lawsuit and that it does not have an obligation to satisfy any portion of the default judgment in the Underlying Lawsuit. [Docs. 1; 6.] Covington acknowledges that the Covington Policy exists but alleges that, because the premium was never paid, it never went into effect and is invalid and unenforceable.[3] [Doc. 6 ¶¶ 14–18, 34–49.] Additionally, Covington alleges that even if the Covington Policy was in effect at the time of the Incident, the Covington Policy includes certain conditions of coverage and exclusions that would bar coverage for the Underlying Lawsuit. [*Id.* ¶¶ 19, 50–58.]

**White's Counterclaim**

On October 23, 2023, Webber and Rehab assigned to White "any and all rights, privileges, entitlements, causes of action, whether in contract, tort, under statutory law, under common law or otherwise and whether existing now or in the future, that [Webber and Rehab] have or may have against [Covington] for coverage or benefits under [the

---

[3] This Court has previously concluded that a determination of whether the Covington Policy took effect and is enforceable is more appropriate on summary judgment after discovery. *White v. Covington Specialty Ins.*, No. 7:24-cv-00816-JDA, Doc. 44 (D.S.C. Dec. 12, 2024). Accordingly, that issue is not before the Court for purposes of the instant motion for judgment on the pleadings.

Covington Policy] in relation to the [Incident]."  [Doc. 51 ¶ 56; *see* Doc. 51-16.]  As an assignee of Webber and Rehab, White asserts a Counterclaim against Covington for breach of contract, alleging that Covington breached its contract with Rehab and Webber by refusing to provide coverage and a defense for the claims in the Underlying Lawsuit.  [Doc. 51 ¶¶ 37–73.]  White asks the Court to find that Covington is obligated to indemnify Rehab under the Covington Policy so that White may recover the judgment he was awarded in the Underlying Lawsuit from Covington, and he seeks attorneys' fees and costs.  [*Id.* at 17–18.]

## APPLICABLE LAW

**Declaratory Relief**

The Declaratory Judgment Act provides that a court of the United States, "[i]n a case of actual controversy within its jurisdiction, . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The Declaratory Judgment Act is "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (internal quotation marks omitted). Courts generally should exercise jurisdiction over declaratory judgment claims "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937) (internal quotation marks omitted).  "Federal courts frequently use federal declaratory judgment actions to resolve disputes over liability insurance coverage, even in advance of judgment against the insured on the underlying claim for

4

which coverage is sought." *Scottsdale Ins. v. GS Thadius LLC ("Thadius")*, 328 F. Supp. 3d 527, 531 (D.S.C. 2018) (internal quotation marks omitted).

**Judgment on the Pleadings Standard**

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c).  In reviewing a motion for judgment on the pleadings, a court should "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019) (internal quotation marks omitted).  "Thus, [t]he court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false." *Integon Gen. Ins. v. Bartkowiak ex rel. Bartkowiak*, No. 7:09-cv-03045-JMC, 2010 WL 4156471, at *2 (D.S.C. Oct. 19, 2010) (alteration in original) (internal quotation marks omitted).  A court should apply the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6) and should grant a motion for judgment on the pleadings "only if the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Lewis v. Excel Mech., LLC*, No. 2:13-cv-281-PMD, 2013 WL 4585873, at *2 (D.S.C. Aug. 28, 2013) (internal quotation marks omitted); *see also Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002) (noting that the standard applicable for motions made under Rule 12(c) is the same as for those made under Rule 12(b)(6)).

**Law Relating to Insurance Policies**

In South Carolina,[4] the question of whether coverage exists under an insurance policy is a matter of law if the terms are clear and unambiguous. *See Williams v. Gov't Emps. Ins.*, 762 S.E.2d 705, 709–10 (S.C. 2014). The insured bears the burden of proving its claim falls within the policy's coverage. *See Gamble v. Travelers Ins.*, 160 S.E.2d 523, 525 (S.C. 1968). "Insurance policies are subject to general rules of contract construction" and policy language must be given "its plain, ordinary and popular meaning." *Diamond State Ins. v. Homestead Indus.*, 456 S.E.2d 912, 915 (S.C. 1995). While "[a]mbiguous or conflicting terms . . . must be construed liberally in favor of the insured," courts may not "torture the meaning of policy language to extend or defeat coverage that was never intended by the parties." *Id*. "[R]ules of construction require clauses of exclusion to be narrowly interpreted, and clauses of inclusion to be broadly construed." *McPherson by & Through McPherson v. Mich. Mut. Ins.*, 426 S.E.2d 770, 771 (S.C. 1993).

## DISCUSSION

Covington argues it is entitled to judgment as a matter of law as to its requested declaratory relief and as to White's Counterclaim because the following provisions in the Covington Policy bar coverage for the claims in the Underlying Lawsuit: the assault and battery exclusion (the "Assault & Battery Exclusion" or "Exclusion"), the injury to performers exclusion, and the limitation of coverage to designated premises or project endorsement. [Docs. 57-1; 69.] In response, White argues that these provisions do not

---

[4] A federal district court sitting in diversity must apply the substantive law of the state in which the court sits, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938), and in this case, the parties do not dispute that South Carolina law applies, [*see generally* Docs. 57-1; 62.]

bar coverage. [Doc. 62.] For the reasons discussed below, the Court concludes that the Assault & Battery Exclusion excludes coverage for the claims asserted in the Underlying Lawsuit and, therefore, addresses only that exclusion.

**Relevant Language in the Covington Policy**

The Court begins with the relevant policy language. The Covington Policy provides in its "Insuring Agreement" that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

[Doc. 51-5 at 13.] The Assault & Battery Exclusion bars coverage for "'bodily injury' . . . or medical expenses arising from actual or alleged 'assault' and/or 'battery.'" [Doc. 51-6 at 17.] The Exclusion further provides that Covington is

> under no duty to defend or indemnify an insured regardless of the degree of culpability or intent and without regard to:
>
> a. Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, "employees", agents or servants; or by any other person lawfully or otherwise on, at or near premises owned or occupied by the insured; or by any other person;
>
> b. The alleged failure or fault of the insured, or his officers, "employees", agents or servants, in the hiring, training, supervision, retention or control of any person, whether or not an officer, "employee", agent or servant of the insured;
>
> c. The alleged failure or fault of the insured, or his officers, "employees", agents or servants, to attempt to prevent, suppress, bar or halt any such conduct;
>
> d. Any actual, threatened or alleged "assault" or "battery";

7

e.  The failure of any insured or anyone else for whom any insured is or could be held legally liable to render or secure medical treatment necessitated by any "assault" or "battery";

f.  The rendering of medical treatment by any insured or anyone else for whom any insured is or could be held legally liable that was necessitated by any "assault" or "battery";

g.  The negligent:

(1) Investigation; or

(2) Reporting to the proper authorities, or failure to so report;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by 1.a. through 1.f. above;

h.  Any other cause of action or claim arising out of or as a result of 1.a. through 1.g. above.

[*Id.*]  Additionally, under the Exclusion, Covington has no duty to defend or indemnify any

claim or litigation where:

a.  Any actual or alleged injury arises out of any combination of an "assault" or "battery"-related cause and a non-"assault" or "battery"-related cause.

b.  Any actual or alleged injury arises out of a chain of events which includes "assault" or "battery", regardless of whether the "assault" or "battery" is the initial precipitating event or a substantial cause of injury.

c.  Any actual or alleged injury arises out of "assault" or "battery" as a concurrent cause of injury, regardless of whether the "assault" or "battery" is the proximate cause of injury.

8

[*Id.* at 17–18.]  And the Exclusion specifically provides that "no coverage or duty to defend is provided if the underlying operative facts constitute an 'assault' and/or 'battery' irrespective of whether the claim alleges failure to provide adequate security in any way."  [*Id.* at 18.]

The Covington Policy defines "assault" as

> the apprehension of harmful or offensive contact between or among two or more persons by threats through words or deeds, and includes, but is not limited to, apprehension of contact of a physical or sexual nature. "Assault" includes apprehension arising out of the distribution, demonstration, accidental discharge, gunsmithing, ownership, maintenance or use of firearms or "weapons".

[*Id.*]  And it defines "battery" as

> the harmful or offensive contact between or among two or more persons and includes, but is not limited to, contact of a physical or sexual nature.  "Battery" includes harm arising out of the distribution, demonstration, accidental discharge, gunsmithing, ownership, maintenance or use of firearms or "weapons".

[*Id.*]

**The Covington Policy Excludes Coverage for the Asserted Claims**

Under South Carolina law, "[w]hile a policy should be liberally construed in favor of coverage and against exclusion, courts are not permitted to torture the ordinary meaning of language to extend coverage expressly excluded by the terms of the policy." *Sphere Drake Ins. v. Litchfield*, 438 S.E.2d 275, 277 (S.C. Ct. App. 1993).  Courts applying South Carolina law have often concluded that assault and battery exclusions bar coverage for claims arising out of physical altercations like the altercation at issue in the Underlying Lawsuit.  *See, e.g.*, *St. Paul Reinsurance Co. v. Riviello*, 296 F. App'x 377 (4th Cir. 2008) (affirming the district court's ruling under South Carolina law that an

insurance company had no duty to defend or indemnify a restaurant against a patron's claim that the restaurant's negligence led to his injuries when he was assaulted at the restaurant, as such claim fell under the policy's assault and battery exclusion); *Sphere Drake*, 438 S.E.2d at 277 (reversing the trial court's finding that an assault and battery exclusion was unenforceable and holding that under the general rules of contract interpretation, the exclusion unambiguously applied to exclude coverage for negligence claims against the insured); *Catlin Specialty Ins. Grp. v. RFB, Inc.*, No. 2:16-3135-RMG, 2017 WL 2493125, at *2 (D.S.C. June 8, 2017) (holding that an assault and battery endorsement applied to a plaintiff's negligence claim against a bar and that "plaintiffs cannot mischaracterize intentional acts as negligence claims in order to avoid the exclusions contained within the insurance policy" (internal quotation marks omitted)). Indeed, this Court previously determined that White's claim against Rehab and Webber in the Underlying Lawsuit was excluded by a similar assault and battery exclusion in a liquor liability policy issued by The Burlington Insurance Company (the "Burlington Policy"). *White v. Covington Specialty Ins.*, 7:24-cv-00816-JDA, 2024 WL 4929744, at *4–5 (D.S.C. Dec. 2, 2024).

Here, the Underlying Lawsuit alleged that Rehab and Webber were negligent because they failed "to provide adequate security on [Club Rehab's] premises[, which] contributed to the criminal acts of the assailant [that] caused [White's] physical injury."[5]

---

[5] The Underlying Lawsuit specifically alleged that Rehab and Webber breached a duty they owed to White by:

> a. Failing to provide adequate security on the subject premises;

b. Knowingly subjecting [White] and other invitees of the subject premises to an unreasonable risk of serious physical harm;

c. Failing to exercise reasonable care to provide a safe environment for the invitees of the subject premises;

d. Failing to provide proper and adequate surveillance of the subject premises;

e. Permitting or otherwise ignoring criminal activity on the subject premises;

f. Failing to properly train its employees, servants, and agents in recognizing and correcting dangerous conditions and risks to invitees of the subject premises;

g. Failing to monitor the performance of its security personnel to ensure the safety of invitees of the subject premises;

h. Failing to monitor the performance of its contractors hired to provide security of the subject premises;

i. Failing to hire and monitor competent security personnel to ensure the safety of invitees of the subject premises;

j. Failing to implement and follow security measures commensurate with the recommendations of security experts and consultants;

k. Failing to monitor the performance of its entertainment promoters of the premises;

l. Failing to conduct pat-down checks at the doors or entry points of the subject premises;

m. Failing to remove unauthorized persons from the subject premises;

n. Failing to adequately control a crowd of dangerous persons in the subject premises;

o. Violating crowd restrictions of the subject premises;

11

[Doc. 51-3 at 8 ¶ 20.]  And the Assault & Battery Exclusion provides that any claim for injury arising from actual or alleged "assault" and/or "battery" is excluded from coverage under the Covington Policy such that Covington has no duty to defend or indemnify against such claim.  [Doc. 51-6 at 17.]  Here, the Court concludes that the allegations in the Underlying Lawsuit clearly indicate that the gunshot that caused White's injuries arose from an "assault" or "battery" as those terms are defined in the Covington Policy. Accordingly, White's claims in the Underlying Lawsuit are expressly and unambiguously excluded by the plain language of the Covington Policy's Assault & Battery Exclusion.

White argues that, although the Court concluded that his claim is excluded under the assault and battery exclusion in the Burlington Policy, the language of the Assault & Battery Exclusion differs from the exclusion language in the Burlington Policy in two ways

---

p.  Failing to have adequate guards or patrols on the subject premises so as to deter dangerous activity on the subject premises;

q.  Failing to warn invitees of the subject premises, including [White], of the risks of criminal activity on same;

r.  Failing to maintain appropriate metal detection devices on the subject premises so as to prevent armed individuals from entering same;

s.  Failing to maintain [] policies, procedures, or [a] system of investigating, reporting, and warning of criminal activity on the subject premises;

t.  Permitting unauthorized persons to come onto the subject premises with weapons; and

u.  All other acts of negligence as may be shown at the time of trial.

[Doc. 51-3 at 7–8 ¶ 19.]

12

such that his claim is not excluded under the Covington Policy. [Doc. 62 at 6–7.] First, he contends that the Underlying Lawsuit does not use the terms "assault" or "battery" but instead refers only to an "altercation" and that, unlike the Burlington Policy's assault and battery exclusion, the Covington Policy's Assault & Battery Exclusion does not include the term "altercation."[6] [*Id.*] However, White cites no legal authority to support his argument that a claim is excluded only if it is asserted using specific language included in an insurance policy's exclusions. Moreover, case law makes clear that how a plaintiff couches his claim is not the appropriate inquiry, but instead the court must determine whether the facts alleged in the complaint bring the claim within the policy's coverage. *See R. A. Earnhardt Textile Mach. Div., Inc. v. S.C. Ins.*, 282 S.E.2d 856, 857 (S.C. 1981) ("If the alleged facts in the complaint fail to bring the case within the policy coverage, the insurer is free of the obligation to defend."); *see also, e.g.*, *Sphere Drake*, 438 S.E.2d at 277 (concluding that a claim alleging negligence in failing to protect customers, in failing to provide adequate security devices, in failing to properly train and supervise employees, and in hiring constituted a claim "for bodily injury 'arising out of' assault and battery" and fell within an assault and battery exclusion). Here, the facts alleged in the Underlying Lawsuit—that White was injured when he was struck by a bullet from a gunshot that was fired during an altercation at Club Rehab [Doc. 51-3 at 4 ¶ 6]—fall squarely within the Assault & Battery Exclusion and, therefore, the Covington Policy does not provide coverage for the claim.

---

[6] The Burlington Policy's assault and battery exclusion was entitled the "Assault, Battery or Other Physical Altercation" exclusion and specifically provided that it barred recovery for injury "[a]rising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed." *White*, 2024 WL 4929744, at *3 (internal quotation marks omitted).

Second, White argues that the Exclusion does not encompass his claim in the Underlying Lawsuit because being shot in the back was "a unilateral act" and the Exclusion defines both "assault" and "battery" as being "between or among two or more persons." [Doc. 62 at 7.]  Again, White cites no legal authority to support this argument, nor does the case law support it.  *See Thadius*, 328 F. Supp. 3d at 534, 538–39 (holding that an assault and battery exclusion applied to exclude coverage where an underlying complaint alleged that a decedent was injured when a bar patron ran over him in the parking lot after the decedent was rendered unconscious while trying to be a peacemaker between other bar patrons who were in a fight).  Moreover, the Underlying Lawsuit alleges that the gunshot was fired *during* an altercation [Doc. 51-3 at 4 ¶ 6], and an altercation necessarily involves more than one person.

Finally, White also contends that the Covington Policy should be construed in favor of coverage because the terms of the Assault & Battery Exclusion "effectively render the Policy's coverage for 'bodily injury' claims 'meaningless' or 'illusory.'"  [Doc. 62 at 7–9 (citing *Canopius U.S. Ins. v. Middleton ("Middleton")*, 202 F. Supp. 3d 540 (D.S.C. 2016)).] In making this argument, White relies on *Middleton*, in which an insurance company sought a declaration that, based on an assault and battery exclusion in the insurance policy, it had no duty to defend or indemnify with respect to bodily injuries resulting from a shooting at a nightclub.  [*Id.*]  *Middleton* involved multiple underlying lawsuits, one of which alleged injuries from the shooting and that the shooting occurred because of a dispute among the nightclub's patrons (the "Greene Action"), while the other underlying lawsuits merely alleged injuries from "the discharge of a firearm" at the nightclub but did not specifically allege that a dispute led to the firearm's discharge (the "Hamilton-Heyward

14

Actions"). *Middleton*, 202 F. Supp. 3d at 543–45 (internal quotation marks omitted). The court concluded that the policy's assault and battery exclusion did not preclude coverage for the claims asserted in the Hamilton-Heyward Actions because the allegations in the underlying lawsuit left open the possibility that the firearm discharged accidentally and excluding coverage on those facts would render the policy "meaningless" and coverage "illusory." *Id.* at 548–53.

The problem with White's argument is that the allegations in his Underlying Lawsuit do not leave open the possibility that the firearm discharged accidentally. [*See* Doc. 51-3 at 4 ¶ 6 (alleging that "an altercation broke out within [Club Rehab's] premises, *during which* a shot and/or shots were fired, with [White] being struck in his back by a bullet resulting in personal injury and paralysis), 8 ¶ 20 (alleging that Rehab and Webber's failure to provide adequate security "contributed to the *criminal acts of the assailant*" causing White's injuries).] Based on similar allegations of being shot when a dispute escalated into gunfire, the *Middleton* court concluded that "[t]he allegations in the [Greene Action] quite clearly indicate that the gunfire arose from an assault or battery, no matter how those terms are defined" because "[f]iring a gun in connection with a dispute is almost invariably done to threaten or intimidate the other parties to the dispute." *Middleton*, 202 F. Supp. 3d at 547; *see id.* at 547–48 (further concluding that it made no difference that the injured patron was not involved in the dispute where the exclusion did not require that the claims be brought by the target of the assault but only that they arose from an assault); *see also Scottsdale Ins. v. Moonshine Saloon, LLC*, 228 F. Supp. 3d 554, 559–60 (D.S.C. 2017) (concluding that an assault and battery sublimit in an insurance policy limited coverage for a claim arising out of a bar patron's death from a random shooting at the bar

15

because even if the shooter did not intend to shoot anyone, "he intended to place someone in reasonable fear of bodily harm" when he fired the gun following an altercation (internal quotation marks omitted)).

Here, it is clear under the definitions of "assault" and "battery" in the Covington Policy that White's injuries resulting from the altercation and gunshots that occurred at Club Rehab the morning of July 13, 2019—and which formed the basis of his negligence claim against Rehab and Webber in the Underlying Lawsuit—resulted from an assault and/or battery under the Covington Policy.  Therefore, White's claim asserted against Rehab and Webber in the Underlying Lawsuit is expressly excluded under the Assault & Battery Exclusion, and Covington is entitled to its requested declaratory judgment and to judgment as a matter of law on White's Counterclaim.

## **CONCLUSION**

Wherefore, based upon the foregoing, Covington's motion for judgment on the pleadings [Doc. 57] is GRANTED.  As such, the Court declares that Covington does not have a duty to defend or indemnify Rehab or Webber under the Covington Policy for any of the claims or damages resulting from White's allegations in the Underlying Lawsuit, nor does Covington have an obligation to satisfy any portion of the default judgment in the Underlying Lawsuit.   Additionally, White's Counterclaim for breach of contract is DISMISSED with prejudice.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

August 3, 2026
Greenville, South Carolina

16